Eastern District of Kentucky
F I L E D
AUG 3 1 2005
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

CIVIL ACTION NO. 04-453-GWU

CHRISTOPHER MOSS,                      PLAINTIFF,

VS.                  **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY,          DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of his applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to

1

Moss

>Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial

2

evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

3

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

4

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

5

Moss

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d

6

279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Christopher Moss, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of chronic post traumatic stress disorder (PTSD), recurrent major depression, and substance addiction disorders. (Tr. 201). Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that, absent the effects of substance addiction, the plaintiff retained the residual functional capacity to perform his past relevant work and, therefore, was not entitled to benefits. (Tr. 24-8). The Appeals Council declined to review, and this action followed.

At the administrative hearing, the ALJ had asked the VE to give a "brief assessment of [the plaintiff's] work history in terms of the exertional level and skill level part," recognizing that "he has a short-term employment [history]." (Tr. 264). The VE described the exertional requirements and skill levels of several jobs which the plaintiff had listed, including janitor, cashier, usher, telemarketer, bartender, painter, and robot cleaner. (Tr. 264-5). He indicated that the job of cashier would have transferable skills to other jobs at the light and sedentary levels. (Tr. 265).

7

Moss

The ALJ than asked the VE whether a person of the plaintiff's work history and educational background could perform any jobs if he had no exertional limitations, but did have psychological restrictions of a "limited but satisfactory" ability to relate to co-workers, deal with the public, maintain attention and concentration, understand, remember, and carry out detailed instructions, work within a regular schedule, work close to others without undue distraction, accept criticism and instructions appropriately, and set realistic goals. (Id.). The VE responded that with these restrictions, the plaintiff would be able to return to "the work that he previously did," as the ALJ put it. (Id.). The VE also identified alternative jobs that such a person could perform, and gave the numbers in which they existed in the state and national economies. (Tr. 266).

The Court notes that it appears from the testimony and Earnings Record that the plaintiff did not perform any of his jobs long enough for them to be considered substantial gainful activity (Tr. 56-63, 108), as the wording of the ALJ's questions to the VE suggests (Tr. 264-266). The ALJ erroneously stated in her decision that "the vocational expert testified that . . . claimant would be able to perform his past relevant work" (Tr. 24-5), which was not the case.[1]

---

[1]There is an additional issue in that the plaintiff's Date Last Insured (DL I) for DIB purposes was determined to be December 31, 2000, meaning that he needed to establish disability before that date in order to be entitled to DIB. His SSI application is not affected by the DLI, and the plaintiff could not be awarded SSI benefits prior to November 17, 2000, the date of an application which was specifically reopened by the ALJ in the present case. (Tr. 17).

Moss

Even the ALJ's selected mental limitations were not supported by substantial evidence. The plaintiff had a long history of both drug addiction and alcoholism.[2] As previously noted, the ALJ found that he also had "severe" impairments due to chronic PTSD and recurrent major depression. The issue for close analysis is what limitations existed absent the substance abuse. 20 C.F.R. § 404.1535, 416.935 (2004).

At the administrative hearing, the plaintiff said that he had been psychiatrically hospitalized as a teenager for schizophrenia and severe depression, although no records were provided. (Tr. 256). He admitted to a history of heavy alcohol abuse and drug abuse, but stated that he had not used alcohol for 18 months prior to the May, 2003 hearing, and was not doing any illegal drugs. (Tr. 257-8). He admitted to a positive urine drug screening on April 25, 2002, but he stated that another positive screen in March, 2003 was due to accidentally taking someone's else's medication. (Tr. 257-9).

The plaintiff's treating psychiatrist, Dr. Samir Gupta, submitted treatment notes beginning with a hospital admission in October, 2001 for "severe anxiety related to panic attacks." (Tr. 149). He continued with regular treatment from Dr. Gupta as well as a therapist until September, 2002, when the therapist resigned from her position. (Tr. 216-17). Mr. Moss stated at the administrative hearing that he was

---

[2]Substance addiction is no longer a proper source of disability. See Pub. L. No. 104-121 §105(a)(1).

9

annoyed that he had told the therapist all of his problems, only to see her leave, and he did not want to tell anyone else about himself. (Tr. 257). He continued to see Dr. Gupta, however. On February 20, 2003, a new therapist noted that Mr. Moss had canceled approximately six prior therapy sessions and was non-compliant with treatment, but that he had been compliant with follow-ups with Dr. Gupta. (Tr. 204). Shortly thereafter, on March 3, 2003, the plaintiff made another visit to Dr. Gupta (Tr. 203), and the physician prepared a mental residual functional capacity assessment indicating that Mr. Moss had a "seriously limited but not precluded" ability to relate to co-workers, deal with the public, interact with supervisors, behave in an emotionally stable manner, and relate predictably in social situations (Tr. 194-6). The psychiatrist stated that the limitations were due to chronic PTSD which resulted in "difficulty with trust issues and reacting to usual work related stress." (Tr. 196). Nothing was said about alcohol or drug problems.

On March 27, 2003, a urine drug screen was positive for benzodiazepine and methadone. (Tr. 197). The plaintiff had been prescribed Xanax, a benzodiazepine, but he claimed that the methadone use had been accidental, and his girlfriend was "able to substantiate his history," according to Dr. Gupta's April 22, 2002 office note. (Tr. 200). According to Dr. Gupta's notes of April 3 and April 22, the plaintiff was to be given more random drug screens, but no results from these tests are in the Court transcript.

10

The ALJ did not accept Dr. Gupta's March 3, 2003 restrictions, on the grounds that it was prepared at a time when the claimant had been non-compliant with the treatment process and had not been attending therapy sessions, and because she was "convinced that Dr. Gupta's assessment reflects the effects of drug addiction and alcoholism on claimant's residual functional capacity." (Tr. 23).

While there is evidence that the plaintiff had a positive urine drug screen shortly after Dr. Gupta's assessment, the psychiatrist did not indicate that substance abuse was a basis for his restrictions, and cited only post traumatic stress disorder. The longitudinal record shows that the plaintiff had not had a positive drug screen prior to the preparation of the assessment since May 8, 2002. (Tr. 222, 224). Subsequently, he had negative screens. (E.g. Tr. 221). Therefore, the ALJ's assertion that Dr. Gupta's restrictions reflected the effects of drug addiction and alcoholism is clear error.

In view of the fact that Dr. Gupta was a treating source, and was the only treating source to express an opinion, his opinion is entitled to great weight. The only other evidence from an examiner during the relevant period was a one-time examination by a psychologist, Dr. Kenneth Starkey, in November, 2001. (Tr. 138). At that time, the plaintiff admitted to regular recent use of marijuana and benzodiazepines, as well as a history of heavy alcohol use, presently continuing at a somewhat more moderate pace. (Tr. 140). Dr. Starkey had concluded that the plaintiff was likely to respond erratically and/or by decompensating under the

pressures found in most day-to-day work settings, but his status "might" change if he were to undergo detoxification from all addictive substances for six months and receive psychiatric and psychological care during this time. (Tr. 144). Thus, Dr. Starkey's evidence provides little useful information about the plaintiff's condition after over a year of treatment by Dr. Gupta.

Likewise, state agency reviewing psychologists gave opinions in December, 2001 and February, 2002 which indicated that the plaintiff was much more limited than found by the ALJ, but their assessments were apparently prepared at least in part based upon an evaluation under the Commissioner's Listing of Impairment 12.09, for substance addiction disorders. (Tr. 155-92).

Thus, there is no evidence from a treating, examining, or reviewing source during the relevant period which contradicts Dr. Gupta's opinion regarding the plaintiff's functional capacity absent substance abuse.

The Commissioner maintains on appeal that a September, 2000 evaluation by a psychologist, Dr. Myron Fridman, during an inpatient admission for alcohol detoxification and polysubstance abuse (Tr. 126), confirms that the plaintiff's problems resulted from substance abuse and not from an independent mental impairment. However, Dr. Fridman, who may have seen the plaintiff one time previously during a detoxification in February 2000, also indicated that the plaintiff had a long history of social phobia, could not even walk into a store without a lot of anxiety, and that this condition had been essentially untreated. (Tr. 129). His

12

Moss

"diagnostic impression " was "mixed psychoactive substance dependence," and "social phobia." (Tr. 130). Apart from the fact that this report was somewhat earlier than the earliest relevant date in the present case, which, due to the ALJ's reopening of a prior application, was November 17, 2000, Dr. Fridman's report read as a whole strongly suggests that the plaintiff had a mental problem independent of substance abuse.

However, because there is some evidence that the plaintiff's substance abuse may have continued, an award of benefits is not presently justified.

The decision will be remanded for further consideration.

This the __31__ day of August, 2005.

G. WIX UNTHANK
SENIOR JUDGE